# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| MATHILDA E. SABAL, A.S.W., E.S.W., and E.W.J., | Case No. 22-CV-2566 (PJS/ECW) |
| Plaintiffs, | |
| v. | **ORDER** |
| CITY OF ST. LOUIS PARK, MID-MINNESOTA LEGAL AID, HAMPSHIRE HOUSE APARTMENTS LLC, HENNEPIN COUNTY SHERIFF OFFICE, ERIC OLSON, DONALD PERRON, and FRANKLIN REED, | |
| Defendants. | |

Mathilda E. Sabal, *pro se.*

This matter is before the Court on Plaintiff Mathilda E. Sabal's (1) Complaint, ECF No. 1; and (2) Application to Proceed in District Court Without Prepaying Fees or Costs, ECF No. 2 ("IFP Application"). For the following reasons, the Court dismisses the Complaint without prejudice and denies the IFP Application as moot.

## I.    BACKGROUND

This action commenced on October 13, 2022, when the Court received the Complaint and IFP Application. *See* Docket. The Complaint purports to bring claims on behalf of four Plaintiffs: Sabal and her three "minor children" (A.S.W., E.S.W., and

E.W.J.).  *See* Compl. at 1.[1]  Sabal asserts that subject-matter jurisdiction exists due to

federal-question jurisdiction under 28 U.S.C. § 1331 and suggests that this action

concerns (among other things) "[T]itle VIII of the Act" and the "Fair Housing Act."  *Id.*

at 4.  These two references appear to mean the same thing, as the Fair Housing Act, 42

U.S.C. §§ 3601–19, 3631, is found in Titles VIII and IX of the Civil Rights Act of 1968,

Pub. L. No. 90-284, 82 Stat. 73 (codified as amended in scattered sections of 5, 18, and 42

U.S.C.).

      The Complaint names seven Defendants: the City of St. Louis Park, Minnesota;

Mid-Minnesota Legal Aid; Hampshire House Apartments LLC ("HHA"); the

"Hennepin County Sheriff Office" (which the Court construes as a reference to the

Hennepin County Sheriff's Office ["HCSO"]); Eric Olson (referred to as an HCSO

"deputy sheriff"); Donald Perron (an attorney); and Franklin Reed (identified as a

"Housing Court referee").  Compl. at 1, 5.  The Complaint concerns Sabal's eviction

from an apartment.  *See id.* at 5–6.  As the Court understands the Complaint's structure,

Sabal provides a couple of sentences of substantive allegations for each defendant.

- The City of St. Louis Park allegedly "told [Sabal that] a civil complaint would be filed against" her.  *Id.* at 6.  Sabal may also be asserting that the City incorrectly suggested (to some unspecified entity) that she was "on Section 8 or public housing."  *Id.* at 5.

- Mid-Minnesota Legal Aid appears to have contacted Sabal after an eviction proceeding was filed against her.  *See id.*  According to

---

[1] Citations to filed materials use the pagination provided by the Court's CM/ECF filing system.

Sabal, they "told [her] to contact them," but she "did not want their services." *Id.* at 5–6.

- HHA presumably leased an apartment to Sabal, but later took action to evict her. *Id.* at 5. Sabal alleges that HHA evicted her even though a third party "paid [her] past due rent." *Id.* at 6.

- Olson allegedly "served" Sabal's answer to the "other party" in her eviction proceedings, and also "came to evict" Sabal in September 2022. *Id.* at 5–6. (Aside from alleging that HCSO is Olson's employer, the Complaint has no substantive allegations about the HCSO.)

- Sabal identifies Perron as a lawyer who represented HHA during the eviction proceedings against Sabal. *See id.* at 5. She claims that Perron represented HHA "under false pretenses"—this apparently means that she believes that Perron's address, as listed on eviction-related paperwork, was incorrect. *Id.* at 6.

- Finally, Reed appears to be the "referee" overseeing the eviction proceeding against Sabal. *Id.* at 5. Sabal asserts that he "lied on court documents," but provides no detail; she also claims that Reed inappropriately told her that an unspecified "Sheriff paper could not be used as evidence." *Id.* at 5–6.

For relief, Sabal asks for $250 million in compensatory damages. *See id.* at 6. She also asks the Court to "make [sure] that this doesn't happen anymore," potentially through some sort of investigation. *Id.*

## II.   ANALYSIS

### A.   *Standards of Review*

Rather than pay this action's filing fee, Sabal filed the IFP Application. Review of the IFP Application indicates that Sabal qualifies financially to proceed IFP. Under 28 U.S.C. § 1915, the federal statute governing IFP proceedings, "[n]otwithstanding any

filing fee, or any portion thereof, that may have been paid, the court shall dismiss [a] case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2).[2]

To assess whether a complaint states a claim, the Court assumes that the complaint's allegations are true and makes all reasonable plaintiff-favoring inferences based on them.  *See, e.g., Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) (citing cases).  A complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint need not contain "detailed factual allegations," but must contain facts with enough specificity "to raise a right to relief above the speculative level."  *Id.* at 555.  District-court determinations of whether a plaintiff meets this standard are "context-specific"; a court must "draw on its judicial experience and common sense."  *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (en banc) (per curiam) (quoting *Magee v. Trs. of Hamline Univ.*, 747 F.3d 532, 535 (8th Cir. 2014) (cleaned up)).  Although the Court construes *pro se* complaints liberally, they must still allege "sufficient facts to support the claims advanced."  *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

---

[2] While the wording here refers to "the case," this District's Courts routinely use § 1915(e)(2) to dismiss portions of cases as well.  *See, e.g., Jones v. Minnesota*, No. 20-CV-1409 (DWF/ECW), 2020 WL 7049335, at *5 (D. Minn. Oct. 23, 2020) (citing cases), *report and recommendation adopted*, 2020 WL 7047683 (D. Minn. Dec. 1, 2020).

In addition to its § 1915 responsibilities, the Court must also police its own jurisdiction.  *See, e.g.*, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).  Under Federal Rule of Civil Procedure 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  It is a plaintiff's burden to "allege in his pleading the facts essential to show jurisdiction."  *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *see also, e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside [federal courts'] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]" (citing cases, including *McNutt*)); *see also, e.g.*, *Ousley v. Glockner*, No. 22-CV-1600 (WMW/DTS), 2022 WL 2905731, at *1 (D. Minn. July 22, 2022) (making same point (quoting *Jones v. Gale*, 470 F.3d 1261, 1265 (8th Cir. 2006))).

B.     *Federal-Law Claim*

As noted above, Sabal cites one federal statute as providing a basis for federal-question jurisdiction here: the Fair Housing Act ("FHA").  *See* Compl. 4.[3]  Under the FHA, certain conduct is unlawful if done "because of race, color, religion, sex, familial status, or national origin," or "because of a handicap" (with "handicap" referring to

---

[3] In addition to this statute, Sabal lists as potential bases of jurisdiction "blockbusting, redlining, race, familial status, intimidation, interference of exercising fair housing, sleeping, [and] harassment."  *See* Compl. at 4.  The Court will consider the "interference" reference here as part of its FHA discussion.  Otherwise, nothing here obviously refers to any relevant federal laws.

certain physical or mental impairments). *See* 42 U.S.C. § 3604; *see also id.* § 3602(h) (defining "handicap").

The FHA covers a lot of ground, but the Court need not survey that now. The Complaint obviously fails to state an FHA claim for the simple reason that it does not state any characteristic of Sabal's that triggers the FHA's protections. That is, the Complaint does not specify Sabal's race, color, religion, familial status, or national origin, nor does it suggest that she has any relevant "handicap."

To be sure, Sabal's first name suggests that she is a female, and "sex" is a relevant FHA category. But even if one assumes that Sabal means to allege that her sex was relevant to any Defendant's conduct—despite the fact that the Complaint does not say that—the Complaint fails to state a claim for another reason. As noted above, black-letter pleading rules require that a complaint present "enough facts to state a claim to relief that is plausible on its face"—facts specific enough "to raise a right to relief above the speculative level." There is nothing like that here. Nothing in the Complaint does anything to suggest—much less demonstrate or show—that any Defendant's conduct related to Sabal's sex. Similarly, Sabal's references to "blockbusting, redlining, [and] race" suggest that she might mean to press FHA claims based on racial discrimination. But here again, nothing in the Complaint does anything to suggest that any Defendant's conduct had any link to Sabal's race (which the Complaint does not even identify). So

here again, the Complaint fails to state any sort of FHA-based race-discrimination claim.

The Court therefore concludes that the Complaint fails to state any claim based on the FHA.  The Court thus dismisses Sabal's FHA claims without prejudice.

C.    *Supplemental Jurisdiction*

What remains in this action are various claims based on Sabal's eviction, but these are not (as best as the Court can tell) based on federal law.  This raises the issue of what to do with these claims, given the FHA claim's dismissal.

Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."  But § 1367(c)(3) specifies that a district court "may decline to exercise supplemental jurisdiction over a claim under [§ 1367(a)] if . . . the district court has dismissed all claims over which it has original jurisdiction."  And as the Eighth Circuit has explained:

> A federal district court has discretionary power to decline the exercise of supplemental jurisdiction where the court has dismissed all claims over which it has original jurisdiction. The factors a court should consider in determining whether to exercise jurisdiction over pendent state law claims are judicial economy, convenience, fairness, and comity.  *[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.*

*Wilson v. Miller*, 821 F.3d 963, 970–71 (8th Cir. 2016) (emphasis added; citations and internal quotation marks omitted).

This case presents the *Miller* situation: the Court is dismissing all of Sabal's potential federal-law claims well before trial.  None of the *Miller* factors suggest any reason for this Court to exert supplemental jurisdiction over Sabal's remaining claims.  The Court therefore declines to exercise jurisdiction over Sabal's remaining claims, and so dismisses those claims without prejudice.

The upshot of this determination is that the Court is dismissing Sabal's entire lawsuit.  Given this outcome, the Court also denies as moot Sabal's IFP Application.

### ORDER

Based upon the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Mathilda E. Sabal's Complaint, ECF No. 1, is **DISMISSED WITHOUT PREJUDICE**.

2. Sabal's Application to Proceed in District Court Without Prepaying Fees or Costs, ECF No. 2, is **DENIED** as moot.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: December 2, 2022

s/Patrick J. Schiltz
Patrick J. Schiltz, Chief Judge
United States District Court